344 So.2d 1332 (1977)
Clyde R. HUFFER, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 76-792.
District Court of Appeal of Florida, Second District.
April 29, 1977.
Jack O. Johnson, Public Defender, Bartow, and Douglas A. Wallace, Asst. Public Defender, Bradenton, for appellant.
Robert L. Shevin, Atty. Gen., Tallahasee, and Richard G. Pippinger, Asst. Atty. Gen., Tampa, for appellee.
SCHEB, Judge.
This appeal is from the trial court's denial of appellant's motion to suppress some marijuana plants seized without a warrant from a "hothouse" located on appellant's residential premises. Appellant pled nolo contendere to a violation of Section 893.13, Florida Statutes (1975), which proscribes the unlawful manufacture of a controlled substance. He specifically reserved the right to appeal the trial court's denial of his motion to suppress. Adjudication of guilt and imposition of sentence were withheld, and appellant was placed on probation for four years.
Appellant contends that the hothouse was within the curtilage of his residence, and thus deserving of constitutional protection. The state, however, argues that no search warrant was required since the area searched was outside the scope of that *1333 protection. We agree with appellant and reverse.
Rosario Caligione was a police officer with the Tarpon Springs Police Department. During his off-duty hours he operated an ice-cream parlor. A customer of the ice-cream parlor informed Officer Caligione that the appellant was growing marijuana at his home in Pasco County. Officer Caligione decided to investigate the matter personally, even though he had no police authority in Pasco County. Thinking that appellant's residence was within the limits of Port Richey, he enlisted the aid of Officer Douglas of the Port Richey Police Department. The two officers drove to the appellant's residence at approximately 11:30 P.M., without making any attempt to first procure a search warrant.
The officers parked their car a short distance down the road from appellant's residence, and walked through his side yard into his back yard. As they approached the hothouse, a small structure built of lumber and draped with sheets of plastic, they noticed a small tear (approximately 18") in the plastic. Officer Douglas shined his flashlight into the tear and observed marijuana plants inside. While Caligione remained at the scene, Douglas went back to the car and radioed the Pasco County Sheriff's Department, as it had become apparent that the appellant's residence was just outside the city limits of Port Richey. Two Pasco County deputies soon arrived, followed by a third a short time later. These three officers also viewed the marijuana plants.
The protection afforded "houses" in the Fourth Amendment to the U.S. Constitution and the Declaration of Rights of the Florida Constitution also includes the curtilage, i.e., the ground and buildings immediately surrounding a dwelling and customarily used in connection with it. Dinkens v. State, 291 So.2d 122 (Fla. 2d DCA 1974). The hothouse in this case certainly falls within this concept. It was no farther than forty feet from the appellant's dwelling, and perhaps as close as ten feet (testimony differs on this point). The very nature of the hothouse indicates that it was used frequently, and in connection with appellant's home.
In the past decade a new concept of Fourth Amendment protection has evolved. Rather than being guided solely by the common law property approach, the courts have tended to determine whether there was a "reasonable expectation of privacy" by the individual. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). We recognized this approach in Olivera v. State, 315 So.2d 487 (Fla. 2d DCA 1975). There the police officer stood on the lawn outside the defendant's window and listened in. We held that the defendant could have reasonably expected that no one would have overheard the activities in his apartment by such an invasion of his privacy. In State v. Belcher, 317 So.2d 842 (Fla. 2d DCA 1975), we held that the defendants did not have a reasonable expectation of privacy while handling stolen jewelry on their front porch. There the defendants' activities could have been observed by anyone from the public street.
The state, while recognizing the Katz view, maintains that the appellant could not have had a reasonable expectation of privacy because the transparency of the clear plastic sheets may have allowed someone to look in the hothouse from the outside. The fact is that the purpose of the plastic sheets was not to permit viewing, but rather to allow sunlight to enter for photosynthesis to occur. The hothouse was not located on or near a public thoroughfare. See State v. Belcher, supra. Rather, it was located behind the appellant's residence in a rural area and the plants growing therein were not plainly visible to the public. Moreover, it was not operated as a commercial venture. It was an adjunct to appellant's residence and was maintained for personal purposes. To observe the plants required not only a significant encroachment upon the appellant's residential premises, but also an intrusion on his right to privacy as well.
*1334 Under either the traditional curtilage approach or the more contemporary reasonable expectation of privacy approach, the appellant's hothouse was deserving of constitutional protection.
Accordingly, the judgment of conviction is vacated. This cause is remanded with directions to grant appellant's motion to suppress and for such further proceedings as may be consistent with this opinion.
BOARDMAN, C.J., and GRIMES, J., concur.