420 So.2d 303 (1982)
STATE of Florida, Petitioner,
v.
William M. RICKARD, Respondent.
No. 54877.
Supreme Court of Florida.
September 30, 1982.
*304 Jim Smith, Atty. Gen. and Charles Corces, Jr., Asst. Atty. Gen., Tampa, for petitioner.
Jerry Hill, Public Defender, James R. Wulchak, P. Douglas Brinkmeyer and David A. Davis, Asst. Public Defenders, Tenth Judicial Circuit, Bartow, for respondent.
ADKINS, Justice.
This cause is here on petition for writ of certiorari supported by certificate of the Second District Court of Appeal that its decision reported as Rickard v. State, 361 So.2d 822 (Fla. 2d DCA 1978), is one which involves a question of great public interest. Art. V, § 3(b)(3), Fla. Const. (1972).
The respondent, defendant at the trial court, William R. Rickard, was arrested after his neighbor, Martin, informed Detective Fitzgerald that he had observed some plants, which he believed to be marijuana, growing in the defendant's backyard. The plants could not be seen from Martin's yard, because defendant had erected a plywood partition next to a storage shed, thereby obstructing the view of his yard on Martin's side. There was also a chain link fence surrounding defendant's yard, but it did not block the view.
Martin took Detective Fitzgerald to a citrus grove behind defendant's yard. About fifty feet away, the detective observed some plants in defendant's yard which, from his experience, he believed to be marijuana. Since defendant was not home, he decided to return the next day to arrest defendant and seize the plants.
The next day, without obtaining a warrant, Detective Fitzgerald returned to the grove with Detective William Page and watched the yard for approximately one hour, hoping to observe defendant in the act of caring for the plants. When defendant did not appear, the two detectives went to his mobile home and arrested him. Defendant asked the detectives if he could get some money from his trousers which were lying on the floor. As defendant reached into the pocket, Detective Page, fearing a concealed weapon, put his hand into the pocket and pulled out a small baggie of marijuana. The detectives then seized the marijuana in defendant's backyard.
Defendant was charged with manufacturing marijuana and felony possession of marijuana. A motion to suppress was denied by the trial court, and defendant pled nolo contendere, reserving his right to appeal the denial of his motion. On appeal, the Second District Court of Appeal upheld the trial court's denial of defendant's motion to suppress the marijuana seized from the trousers pocket as being incident to lawful arrest. However, the court reversed the denial of the motion to suppress the marijuana plants seized from defendant's backyard, citing as its authority Morsman v. State, 360 So.2d 137 (Fla. 2d DCA 1978), cert. disch., 394 So.2d 408 (Fla. 1981). The district court certified the following question to this Court:
Where contraband is seen in plain view by police in the defendant's back yard from a point adjacent to the property, may the police seize the contraband without a warrant in the absence of exigent circumstances?
361 So.2d at 825. We answer the question in the negative.
Arguments in this case have shown a marked confusion between plain view per se and the "plain view doctrine" as espoused in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Confusion was dispelled in Ensor v. State, 403 So.2d 349, 352 (Fla. 1981), when we said:
The term "plain view" has been misunderstood and misapplied because courts have made it applicable to three distinct factual situations. This has resulted in confusion of the elements of the "plain view doctrine." To eliminate this confusion, we believe it appropriate to distinguish the true "plain view doctrine" as established in Coolidge v. New Hampshire, *305 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), from other situations where officers observe contraband.
The first factual situation we identify as a "prior valid intrusion." In this situation, an officer is legally inside, by warrant or warrant exception, a constitutionally protected area and inadvertently observes contraband also in the protected area. It is this situation for which the United States Supreme Court created the "plain view doctrine" in Coolidge and held that an officer could constitutionally seize the contraband in "plain view" from within this protected area. We emphasize that it is critical under this doctrine for the officer to be already within the constitutionally protected area when he inadvertently discovers the contraband.
We identify the second factual situation as a "non-intrusion." This situation occurs when both the officer and the contraband are in a non-constitutionally protected area. Because no protected area is involved, the resulting seizure has no fourth amendment ramifications, and, while the contraband could be defined as in "plain view," it should not be so labeled to prevent any confusion with the Coolidge "plain view doctrine."
The third situation concerns a "pre-intrusion." Here, the officer is located outside of a constitutionally protected area and is looking inside that area. If the officer observes contraband in this situation, it only furnishes him probable cause to seize the item. He must either obtain a warrant or have some exception to the warrant requirement before he may enter the protected area and seize the contraband. As with the non-intrusion situation, the term "plain view" should not be employed here to prevent confusion. For clarity, we label an observation in the latter two non-Coolidge situations as a legally permissive "open view."
Here the officer was located outside of a constitutionally protected area and looking inside that area. The officer did not obtain a warrant nor did he have any exception to the warrant requirement. The seizure without a warrant was improper and the motion to suppress the plants in the backyard should be granted.
This case is distinguishable from Morsman v. State because an illegal search preceded the seizure in Morsman, whereas here there was no prior search. In Morsman, police found marijuana only after illegally entering Morsman's backyard. There was no evidence that the contraband was visible from outside the backyard, so the warrantless search and seizure were illegal. We are now presented a different situation. Police were in an orange grove where they had a legal right to be when they observed marijuana growing in respondent's backyard. The plants were open to view only fifty feet away; therefore, no search occurred.
Lightfoot v. State, 356 So.2d 331 (Fla. 4th DCA), cert. denied, 361 So.2d 833 (1978), is pertinent because of certain factual similarities. There, also, the marijuana was open to the view of police officers who were where they had a legal right to be. In Lightfoot and the current case, marijuana was growing in a backyard surrounded by a chain link fence which did not obstruct visibility. Police officers in both cases were answering neighborhood complaints, and neighbors directed them to unobstructed views of marijuana plants. The vantage point in Lightfoot was a neighbor's yard; in this case it was the orange grove behind defendant's mobile home.
The court in Lightfoot held that the defendant showed no expectation of privacy because he took no steps to conceal the marijuana plants from people who could see into the backyard. In the present case, defendant blocked the view of his next door neighbor with a shed and a plywood partition. It appears from the record that this was his only adjacent neighbor. However, the backyard and marijuana plants were completely open to view from the privately owned orange grove behind the yard. Since the owners were "up north," people may not have been in the grove often, but the police had been asked to keep an eye on the grove for trespassers. Therefore, defendant's backyard was open to view by police, *306 possibly grove workers, and meandering neighbors.
In Norman v. State, 379 So.2d 643 (Fla. 1980), this Court agreed that privacy should be recognized in areas where a person has exhibited an actual expectation of privacy, if society recognizes that expectation as reasonable. Privacy expectations may be bolstered by a cognizable property right in an invaded area. Norman quoted the United States Supreme Court in Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), that "one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of this right to exclude." 439 U.S. at 143, n. 12, 99 S.Ct. at 430 n. 12. The defendant in the present case exhibited an actual expectation of privacy by putting the marijuana behind a shed and erecting a plywood partition to obstruct the neighbor's view. The question becomes whether society sees the backyard as harboring a reasonable expectation of privacy.
In Huffer v. State, 344 So.2d 1332 (Fla. 2d DCA 1977), marijuana plants were illegally seized from a backyard hothouse. The plants were enclosed and not plainly visible to the public. Police observed the plants only after significant encroachment upon residential premises to look through a tear in plastic draped over the hothouse. The Court held that since the protection afforded to "houses" by the Fourth Amendment and by the Declaration of Rights of the Florida Constitution includes the curtilage surrounding a dwelling, the search of the backyard hothouse intruded upon Huffer's right to privacy.
The case before us falls between Lightfoot (no expectation of privacy shown) and Huffer (great expectation of privacy shown). The privacy of a Florida backyard is generally protected by law, even the backyard of an apartment complex surrounded only by a chain link fence. One may not enter that area to observe occupants inside the residence. Fixel v. Wainwright, 492 F.2d 480 (5th Cir.1974); accord, Olivera v. State, 315 So.2d 487 (Fla. 2d DCA 1975), cert. denied, 330 So.2d 21 (Fla. 1976).
Under the analysis of Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), there can be no question but that Rickard demonstrated an expectation of privacy in carrying on these activities in his backyard, which was not only secluded from view by virtue of lack of proximity of neighbors and others, but by his erection of a chain link fence and partition. That society is willing to honor this objectively manifested expectation of privacy was acknowledged by this Court in Morsman, 394 So.2d at 409. See also Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) (property rights reflect society's recognition of privacy rights); Fixel v. Wainwright, 492 F.2d 480 (5th Cir.1974) (fourth amendment protects backyard of apartment). Even when the initial observation of the officer did not rise to the level of a search, as is probably the case here, courts will not allow an ensuing warrantless search or seizure in a constitutionally protected area such as one's backyard. See State v. Texeira, 62 Haw. 44, 609 P.2d 131 (1980). Since the defendant in the present case exhibited an actual expectation of privacy and since no showing of exigent circumstances was made, under the facts of this case we answer the certified question in the negative.
We must determine the legality of the arrest of defendant in his home without a warrant. The controlling authority on this issue at the time of his arrest was State v. Perez, 277 So.2d 778 (Fla.), cert. denied, 414 U.S. 1064, 94 S.Ct. 570, 38 L.Ed.2d 468 (1973), and United States v. Williams, 573 F.2d 348 (5th Cir.1978). These authorities indicated that no warrant was necessary to arrest one in his home.
In Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the Court held that any arrest made of a person in his home without a warrant and without the existence of exigent circumstances would be unreasonable and, as such, unconstitutional. Payton should be applied retroactively so as to void the arrest, making the evidence obtained pursuant thereto inadmissible at defendant's trial. United *307 States v. Johnson, ___ U.S. ___, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982).
Summarizing, we hold that backyards may reasonably harbor privacy expectations as exhibited by a person's actual demonstration of such expectations. Where, as here, the observation is made without any intrusion into a protected area, the fourth amendment does apply.
We answer the certified question as follows:
Where contraband is seen in plain view by police in the defendant's backyard from a point adjacent to the property and the defendant has exhibited an actual expectation of privacy, the police may not seize the contraband without a warrant in the absence of exigent circumstances.
The seizure of the baggie of marijuana in the home of defendant should not be upheld, because it was not incident to a lawful arrest.
The decision of the district court of appeal requiring suppression of the plants is approved. The decision affirming the denial of the motion to suppress the baggie is quashed. This cause is remanded to the district court of appeal with instructions to reverse the order of the trial judge denying the motion to suppress.
It is so ordered.
ALDERMAN, C.J., and BOYD, OVERTON and McDONALD, JJ., concur.