LETTS, Chief Justice.
The defendant was charged with several counts of armed robbery and the state appeals the trial court’s granting of the defendant’s motion to suppress. We reverse.
The defendant, already on parole for robbery, was a suspect in another robbery of a bank in Dothan, Alabama. Following up on leads on this Dothan crime, a sergeant in the Dothan Police Department came to Ma-rianna, Florida and cooperated with two local officers in an attempt to locate the defendant. To help, the police produced a description and a composite sketch (or xerox of a mug shot) of the suspect and the detectives took it to various locations in search of anyone who could identify the defendant. Subsequently, they learned that a man resembling the defendant had bought a black Mercury sedan from a local automobile dealership. Several days later the police received a call that the defendant was at that moment at the automobile dealership and upon arriving there saw the defendant behind the steering wheel of a black Mercury sedan. Thereupon the police told the defendant to step out of the car, and arrested him on suspicion of the Dothan bank robbery.
There also was a passenger in the defendant’s car and police asked him if he had a driver’s license so that he could drive the *581 defendant’s automobile to the police station. The passenger, however, did not have a driver’s license.
While this conversation was taking place the owner of the automobile dealership joined the group and told the police he was repossessing the car from the defendant because the check the defendant had given him in payment therefor was no good. The dealer explained that the car was on consignment to him to sell, that he was retaking possession and he then requested that the police move the car into a stall on the lot. Pursuant to this request the police drove the Mercury into the stall and in so doing discovered in the Mercury, a bag in plain view stuffed with money, the bag being labeled with the words “Bank of Miami.” This bag was seized by the police and the car then searched, producing a .38 caliber firearm.
Also seized at the same time was a key to a Holiday Inn room which the two occupants of the black Mercury sedan indicated did not belong to them but belonged to one Michael Thompson whom they had met in a bar. The police then took the key and went to the motel where motel employees discovered another firearm in an open drawer, which the police then went to the room and seized.
The court granted the suppression of the contraband seized at both locations using the following language:
1. The seizure of the gun and money bag from the Defendant’s car at the Pfordy [Pforte] Motor Company cannot be justified under any exception to the warrant requirements. The Court specifically finds that neither item of evidence was in plain view. Additionally, there were no exigent circumstances precluding a warrant from being obtained.
2. None of the evidence seized from the Defendants’ Holiday Inn Motel room can be justified under any exceptions to the warrant requirements. Under the circumstances as they existed the Defendants cannot be said to have abandoned the room and there were no exigent circumstances to justify a warrantless search.
We disagree with the judge on both of his findings. In our view the seizure of the bank bag in the automobile was justified under the plain-view doctrine. The three requirements to be met under the plain-view doctrine are, (1) that the police must observe the evidence from plain sight without the benefit of a search, (2) the police must have a legal right to be where they are when they make the plain sight observation, and (3) the police must have probable cause to believe that the evidence seen constitutes contraband. See Pomerantz v. State, 372 So.2d 104 (Fla. 3d DCA 1979). We believe all of these requirements were satisfied here.
Certainly the police were clearly conducting a lawful investigation when they went to the local automobile dealer and there was nothing reprehensible in them asking the defendant to step out of the car and arresting him, nor is it argued on appeal that there was. The sole question is, did the police then have the right to get in it and drive it to the stall? We think they did. The police offered the passenger the opportunity to drive the car but he could produce no driver’s license. The police were then asked by the dealership’s owner to move the car to a particular location because he was repossessing it by reason of the defendant having given him a bad check. We see nothing wrong with this either. The defendant argues that the police “engineered” the invitation from the dealer to be helpful and move the car when it would have made much more sense for the dealer to move it himself. However there is no clear reference to the record in support of that argument. Suppose the police had actually said: “May we move the car Mr. Dealer?” and the dealer said: “Yes, please do.” We cannot see that such a dialogue would vitiate the police entry into the vehicle under the facts of this case. The polite offer of assistance by police, although not necessary to the performance of their duties, is not to be struck down just because their motives are not altogether altruistic. See Carter v. State, 370 So.2d 1181 (Fla. 4th DCA 1979).
*582 Thereafter when the policeman got into the Mercury he saw in plain view a bank bag stuffed with money with “Bank of Miami” stamped on it, and from all the surrounding circumstances it certainly would create a reasonable inference that a bag stamped with the name of a bank on the outside, stuffed with money and in the possession of a man sought for bank robbery, was the fruit of a crime. We believe probable cause existed.
A short time later the automobile dealer acquiesced to the police request that they search the vehicle. It would certainly appear that he had apparent authority to grant that request in the light of the surrounding circumstances relative to repossession. It is also argued by the defense that the statement by the dealer about his right to possession and control and the dealer’s reference to bad checks did not give him the actual possessory right incident to consenting to a search. In support the defendant cites Sheff v. State, 329 So.2d 270 (Fla. 1976) where the suspicions of a cleaning maid prompted the management of a motel to call the police and admit them to the defendant’s rented room to search his luggage. In striking down that search the supreme court pointed out that a guest’s implied consent to admission of hotel employees to his room, is only for the purpose of their customary duties which does not include the power to authorize a police search. We agree with that, but believe this case is different. The dealer was not giving the police permission to search the defendant’s car, he was ostensibly giving them consent to search a car which he claimed the right to possess, or repossess under consignment, to the exclusion of the defendant. We simply cannot expect the police to conduct an on-the-spot title search as to who owns property. The dealer stated that he was entitled to the possession and control of the car and there is no refutation of that statement in the record. See State v. Drake, 343 So.2d 1336 (Fla. 1st DCA 1977).
Accordingly, the police had the right to enter the car. Upon doing so they plain-viewed the bank bag which in turn gave them the probable cause for the search that revealed the .38 caliber firearm.
As to the subsequent search of the motel room: the police, having discovered the key in the automobile, asked the defendant and his passenger if it belonged to them. The answer was that it was not their key but that it belonged to one Michael Thompson, a person they had met at a bar. This amounted to a denial of any possessory interest of their own since they offered no explanation as to why they had it. We, therefore, do not believe that they had standing to contest a search. As we said in State v. Muzevsky, 388 So.2d 21 (Fla. 4th DCA 1980), “to have standing to attack the illegality óf a search and seizure the person must show that he had legitimate expectation of privacy in the area searched.” There was no showing by the defendant or his passenger that either one of them had any expectation of privacy in the motel room; on the contrary, they denied it. It is not tenable to deny ownership of contraband, or personal property that leads to the discovery of contraband, on the one hand and then later argue standing to contest a search and seizure on the other.
For all of the foregoing reasons we believe that the ruling of the trial judge was incorrect and this cause is, therefore, reversed and remanded for further proceedings in conformance herewith.
REVERSED AND REMANDED.
ANSTEAD, J., and STONE, BARRY J., Associate Judge, concur.