FIRST DISTRICT COURT OF APPEAL
STATE OF FLORIDA

_____

No. 1D17-4674
_____

JAMES M. BRYANT,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Leon County.
Angela C. Dempsey, Judge.

March 7, 2019

PER CURIAM.

In this appeal, James Bryant ("Appellant") challenges the denial of his motion to suppress on three grounds. He argues: (1) he had a privacy interest in his backyard and the deputies illegally entered this constitutionally-protected space; (2) his later consent to search did not validate the illegal action by the deputies; and (3) his consent was involuntary because he submitted to police authority. We affirm for the reasons discussed below.

*Facts*

In January 2017, Deputy Hatcher responded to a tip about suspicious chemical smells coming from a residence. Upon arriving in the area, Hatcher stood in an elevated ditch area off the

driveway to acquire a view of the house. From this vantage point, he saw a male using a grinding tool at the back of the house behind a shed. Hatcher and another deputy then walked up a tree line and into the yard while two more deputies drove up the driveway. Although there was no gate, a fence had been erected around the yard. As the deputies approached, Appellant came out of the shed. He explained that he had been cutting glass which resulted in the strong odor.

Appellant showed Sergeant Hayes the area behind the shed where he had been working. While in that area, Hayes noticed an individual hiding in the exhaust window of the shed; he directed the individual to come out. While Deputy Hatcher detained the individual, Deputy Whitley made contact with two females in the backyard. Deputy Harrelson and Hayes spoke with Appellant by the trunk of their patrol car which was parked in the driveway of Appellant's yard. Appellant was presented with a consent to search form which Appellant signed. The consent to search form explained that Appellant had been informed of his constitutional rights not to have a search made of the property without a search warrant and his right to refuse to consent to a search. However, Appellant waived these rights and signed the form which expressly gave deputies his permission to conduct a search.

The deputies, thereafter, searched the shed and found evidence of methamphetamine manufacturing. Appellant was charged with trafficking, manufacture and possession of methamphetamines and possession of illegal chemicals. He moved to suppress the evidence found as a result of the warrantless search, raising the same arguments he makes on appeal. The trial court denied the motion. The trial court determined the search was a consensual encounter and the deputies did not illegally enter the property. Furthermore, Appellant gave consent to search freely and voluntarily and such consent was not an acquiescence to police authority.

Appellant subsequently pled nolo contendere to manufacturing of methamphetamine and possession of listed chemicals, reserving his right to appeal the denial of his motion to suppress. This appeal follows.

*Analysis*

A trial court's ruling on a motion to suppress comes to this Court with a presumption of correctness regarding findings of historical facts. We review pure questions of law *de novo*. *State v. Markus*, 211 So. 3d 894, 902 (Fla. 2017).

Initially, we agree with Appellant that the trial court erred in concluding the deputies legally entered his backyard. The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their persons . . . and effects, against unreasonable searches and seizures." *See also* Art. I, § 12, Fla. Const. Under the Fourth Amendment, a "search" occurs when an individual's reasonable expectation of privacy is infringed by an agent of the government. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). A person has the highest expectation of privacy in his home. *See California v. Ciraolo*, 476 U.S. 207, 213 (1986). This extends to the curtilages of the home as well, such as a backyard. *See id.* at 212-13; *see also State v. Morsman*, 394 So. 2d 408, 409 (Fla. 1981) (noting one had reasonable expectation of privacy in a backyard of a house because passersby could not usually see this area); *Lollie v. State*, 14 So. 3d 1078 (Fla. 1st DCA 2009). "When a citizen has a reasonable expectation of privacy, 'police officers may not enter a [property] without a warrant, absent consent or exigent circumstances.'" *Osorio v. State*, 244 So. 3d 1115, 1118 (Fla. 4th DCA 2018) (quoting *Levine v. State*, 684 So. 2d 903, 904 (Fla. 4th DCA 1996)). Exigent circumstances are few in number and include such circumstances as pursuing a fleeing felon, preventing the destruction of evidence, searching incident to a lawful arrest, responding to medical emergencies, and fighting fires. *Riggs v. State*, 918 So. 2d 274, 279 (Fla. 2005).

Here, Appellant had a reasonable expectation of privacy in his backyard. The evidence confirmed that it was difficult to see into the backyard from the public road. Deputy Hatcher confirmed that he could not see the residence or into the backyard without climbing an elevated ditch next to the driveway. Additionally, Appellant maintained a fence around his property. *Osorio*, 244 So. 3d at 1119 (noting a homeowner may further exhibit an expectation of privacy by putting up fences or taking other steps to exclude the public from seeing into or accessing curtilage).

3

The record contains no evidence of any exigent circumstances to justify a warrantless search or entry into the backyard. Although the deputies were responding to a call about a suspicious chemical smell, this did not provide them with sufficient cause to enter the backyard without a warrant. *Cf. Glass v. State*, 736 So. 2d 788 (Fla. 2d DCA 1999) (holding that officers had no right to enter backyard simply for the purpose of investigating an anonymous tip). Thus, despite the lack of a gate to prevent entrance into the property or the backyard, Appellant still maintained a reasonable expectation of privacy in his backyard, and the deputies' entry into the backyard based on a tip and without a warrant violated Appellant's Fourth Amendment rights.

However, prior to the deputies searching the shed and discovering the evidence leading to his conviction, Appellant signed a consent to search form. Where there is illegal conduct on the part of the police, such as here, a consent to search can be found voluntary and valid if there is clear and convincing evidence the consent was not a product of the illegal police action. *See Montes-Valeton v. State*, 216 So. 3d 475, 480 (Fla. 2017) (citing *Reynolds v. State*, 592 So. 2d 1082, 1086 (Fla. 1992)); *Gonzalez v. State*, 59 So. 3d 182, 185 (Fla. 4th DCA 2011).

In determining whether consent was freely and voluntarily given and not the product of unlawful police activity, the totality of the circumstances must be evaluated. *See Davis v. State*, 594 So. 2d 264, 266 (Fla. 1992); *Blake v. State*, 939 So. 2d 192, 196 (Fla. 5th DCA 2006). This is a factual question for the trial court, and its ruling should not be disturbed on appeal unless it is clearly erroneous. *Davis*, 594 So. 2d at 266. Some factors to consider are:

> (1) the time and place of the encounter; (2) the number of officers present; (3) the officers' words and actions; (4) the age and maturity of the defendant; (5) the defendant's prior contacts with the police; (6) whether the defendant executed a written consent form; (7) whether the defendant was informed that he or she could refuse to give consent; and (8) the length of time the defendant was interrogated before consent was given.

4

*Montes-Valeton*, 216 So. 3d at 480; *see also State v. Evans*, 9 So. 3d 767, 769 (Fla. 2d DCA 2009) (noting factors to consider include "whether the person is under arrest or otherwise detained, the age, education, intelligence, or mental condition of the person giving consent which would evidence a vulnerable state, coercive circumstances, and conduct by law enforcement such as a show of force, other threatening conduct, a prolonged detention, or verbal threats").

Clear and convincing evidence supports the trial court's finding that Appellant voluntarily consented to the search and did not merely acquiesce to police authority. Appellant, who was almost thirty-years-old, was free to advise the officers to leave at any point up until the search; he had not been arrested and was not in handcuffs. There was no show of force by the deputies. The deputies had not drawn their weapons and had not made any verbal threats to Appellant. Only two of the deputies were near Appellant when he was signing the consent form. The other two deputies were busy talking with the other individuals in the backyard. In addition, no evidence was introduced that the deputies commanded Appellant to consent or made repeated requests for his consent. Furthermore, the deputies were on site a relatively short time, about 10 minutes, before Appellant signed the consent form. Accordingly, Appellant's consent to search was free of the taint of the prior illegal police action.

## *Conclusion*

As clear and convincing evidence exists to support the trial court's determination that Appellant freely and voluntarily consented to a search of his shed, we affirm the denial of Appellant's motion to suppress.

AFFIRMED.

LEWIS, RAY, and M.K. THOMAS, JJ., concur.

5

———————————————

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

———————————————

Andy Thomas, Public Defender, and Kasey Lacey, Assistant Public Defender, Tallahassee, for Appellant.

Ashley B. Moody, Attorney General, and Benjamin L. Hoffman, Assistant Attorney General, Tallahassee, for Appellee.